IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 24-cr-187 |
| v. | : | |
| **MASON PORTER,** | : | |
| Defendant. | : | **VIOLATIONS:** |
| | : | 18 U.S.C. § 1752(a)(1)(Entering and Remaining in a Restricted Building or Grounds) |
| | : | 18 U.S.C. § 1752(a)(2)(Disorderly and Disruptive Conduct in a Restricted Building or Grounds) |
| | : | 40 U.S.C. § 5104(e)(2)(D)(Disorderly Conduct in a Capitol Building) |
| | : | 40 U.S.C. § 5104(e)(2)(G)(Parading, Demonstrating, or Picketing in a Capitol Building) |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Mason Porter (the "Defendant"), with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, Defendant traveled from Ohio to Washington, D.C. with friends from work.

9. Defendant attended what he called the pro-Trump rally near the Ellipse in Washington, D.C. After listening to former President Trump's speech, Defendant walked to the Capitol building.

10. Defendant walked into the Capitol building through the Parliamentarian Doors, which are located on the Senate side of the building. Defendant entered the Capitol at approximately 2:45 PM. At the time that he entered, alarms could still be heard in the doorway. After entering, Defendant took photos of himself and peered into a nearby office. The crowd chanted, "USA!" and officers deployed chemical irritants.

11. When the Defendant entered the Capitol building, a line of police officers tried to prevent rioters from going further into the building. The Defendant joined the crowd and overran the officers.

12. As officers tried to re-establish a line, members of the crowd chanted, "get out of the way" and "forward." The Defendant continued further into the building as the rioters continued to break police lines and cheer as they went further into the building. He watched as other rioters pushed officers.

13. The Defendant remained in the building until law enforcement officers, some dressed in riot gear, directed him out of the building. As Defendant moved toward the exit, Defendant grabbed an ink pen off a table in the Brumidi Corridor. Defendant then complied with commands and left the Capitol building at approximately 3:07 PM. The Defendant cheered as he exited the building.

14. After being directed out of the building by officers, the Defendant went to the east side of Capitol grounds and took photos of other rioters breaching the building.

15. While on Capitol grounds, Defendant helped another rioter attempt to scale one of the walls of the Capitol building.

16. On January 7, 2021, Defendant posted a message on his Facebook page, which stated in part:

> "It's funny that people are ok living in fear of losing their constitutional rights and freedoms. People take action and use their constitutional right to fight against the corruption and destruction and the future of our country is some how a bad thing.
> …
>
> Our forefather [sic] gave us the 2nd amendment because they knew power the government was gonna have. And if corrupted they knew that violence and the 2nd ammendment [sic] would be the only defense against it. Love it or hate it this is America its brick and mortar foundation was built with an understanding of this happening. I don't feel shame. Note even close! There was no violence on ourside [sic] yesterday and we were UNARMED and still took the capital building. Imagine what could happen if we exercised our second amendment to the fullest. That fear is why the media is twisting the narrative in this. They knew they are vulnerable now."

### *Elements of the Offense*

17. The parties agree that the offense of Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D), requires the following elements:

   a. First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds;

   b. Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress;

   c. Third, the defendant acted willfully and knowingly.

18. The parties agree that the offense of Parading, Demonstrating, or Picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), requires the following elements:

a. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

b. Second, the defendant acted willfully and knowingly.

### *Defendant's Acknowledgments*

19. Defendant knowingly and voluntarily admits to the elements as set forth above. Specifically, the Defendant admits that he engaged in disorderly or disruptive conduct inside the U.S. Capitol Building and that he engaged in such actions with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

20. Defendant also admits that he willfully and knowingly entered the U.S. Capitol Building knowing that he did not have permission to do so, and that while inside the Capitol, he willfully and knowingly paraded, demonstrated, or picketed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:/*s/ Taylor L. Fontan* Taylor
L. Fontan,
IN Bar No. 35690-53 Assistant
United States Attorney 601 D
Street NW
Washington, D.C. 20001 Phone:
(202) 815-8597
Email: Taylor.fontan@usdoj.gov

## DEFENDANT'S ACCEPTANCE

I have read every page of this Agreement and have discussed it with my attorney, Peter Cooper, I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date: 9-18-24

_____
Mason Porter
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Agreement, reviewed this Agreement with my client, Mason Porter, and fully discussed the provisions of this Agreement with my client. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 19 Sept '24

_____
Peter Cooper
Attorney for Defendant